UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MALIK HOLLIS,                  )
                               )
        Petitioner,            )
                               )
    v.                         )    1:19-cv-00322-JAW
                               )
                               )
MATTHEW MAGNUSSON,             )
                               )
        Respondent             )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Pursuant to 28 U.S.C. § 2254, Petitioner contests the state court's denial of his post-conviction claim. (Petition, ECF No. 1.) Petitioner contends the state court erred in its application of *Batson v. Kentucky*, 476 U.S. 79 (1986) to Petitioner's challenge to the jury selection process. The State contends that the record supports the state court's findings and reasoning.

After a review of the section 2254 petition, the State's response, and the record, I recommend the Court deny Petitioner's request for relief.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In July 2017, following a two-day jury trial, Petitioner was convicted in state court of reckless conduct with a dangerous weapon, 17-A M.R.S. § 211(1), and criminal threatening with a dangerous weapon, 17-A M.R.S. § 209(1). (*State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Docket Record at 8, Judgment and Commitment at

1.) The state court sentenced Petitioner to three years in prison on each count, to be served concurrently. (*Id.*)

According to the record, in May 2016, Petitioner, who is African American, was involved in an altercation with several white men outside an apartment building in Lewiston. *State v. Hollis*, 2018 ME 94, ¶ 2, 189 A.3d 244. The cause of the altercation and how it escalated were disputed at trial. *Id*. One of the men involved testified at trial that he hit Petitioner with a metal handlebar and called Petitioner a racial epithet. *Id*. at ¶ 2, n.2. The man admitted that he told Petitioner that he was going to kill him. *Id*. He also testified that one of the other men had an aluminum baseball bat and another had a baton. *Id*. Petitioner ran around the corner to his own apartment and returned with a handgun, which Petitioner fired into a dirt pile located near him. *Id*. at ¶ 2. Petitioner was arrested and charged; a jury trial was scheduled for July 2017. *Id*. at ¶ 3.

Jury selection occurred on July 6, 2017. Only one of the thirty-two randomly selected jurors in the pool (Juror 71 or the Juror) was a person of color.[1] Although neither the prosecution nor the defense challenged the Juror for cause, the prosecution used one of its peremptory challenges (the sixth of nine, including alternates) to remove the Juror from the jury. Petitioner's counsel objected to the State's use of a peremptory challenge to remove Juror 71. The State maintained the Juror's "ethnicity had no bearing" on the

---

[1] Because the trial court and Petitioner referred to Juror 71 as a "person of color" and because the record did not reveal the ethnicity of the Juror, the Law Court referred to Juror 71 as a person of color. *State v. Hollis*, 2018 ME 94, n.1  This recommended decision will similarly refer to Juror 71. Juror 71 apparently was the only person of color in the jury pool. (*See State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Post-Trial Hearing Transcript, 20:21-23.)

challenge and cited the Juror's "level of education and other various factors that were provided in the list from the court" as the bases for the challenge. The trial court noted it could not make a finding of systemic exclusion. Juror 71 was removed from the jury. *(State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Jury Selection Transcript, 59:7-61:3.)

The trial proceeded on July 13 and 14, 2017; Petitioner was convicted. Post-trial, Petitioner moved for a judgment of acquittal or, in the alternative, for a new trial, arguing that the State used a peremptory challenge to remove Juror 71 from the jury in violation of the United States Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson,* the Supreme Court established a three-step process for a court to determine whether a preemptory challenge is the product of purposeful discrimination: "First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." *Foster v. Chatman*, 136 S.Ct. 1737, 1747 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008)).

The State argued that its peremptory challenge of Juror 71 was based on Juror 71's level of education.[2] Juror 71's level of education was listed as 11th grade. The State

---

[2] The State also argued that it used a peremptory challenge for Juror 71 based on the Juror's responses and demeanor during voir dire in another case (*State v. Dawood*, Me. Sup. Ct., And. Cty., No. CR-2015-02197). (*Id*. at ¶¶ 5-6.) The trial court observed that while the court recalled that Juror 71 had been at side bar for voir dire in the *Dawood* matter, the court did not remember the exchange that the State recounted nor the Juror's demeanor during the exchange. (*Id*. at 25:15-21.) Petitioner's counsel, in response to the State's

3

anticipated that Petitioner would raise the affirmative defense of self-defense at his trial and argued that self-defense is a "complicated concept" with complicated "instructions that would follow should self-defense be (and was) generated at trial …." (State's Response at ¶ 6.) The State also argued that while the underlying facts of the case "were not necessarily complicated," self-defense is a "fairly complicated issue." (*State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Post-trial Hearing Transcript at 18:17-19:1.)

The trial court requested that Petitioner submit additional information, and in response Petitioner filed with the court "An analysis of the state's peremptory challenges" and "An analysis of the ultimate makeup of the jury." The submissions and the record demonstrate that of the State's nine peremptory challenges, five were used to remove jurors with a 12th grade education and one to remove Juror 71, who had an 11th grade education.[3] The empaneled jury of fourteen jurors (including alternates) consisted of six jurors with a 12th grade education and eight jurors with education levels from 13 to 18 years.

In its Decision and Order denying Petitioner's post-trial motion, the trial court acknowledged that at trial it had not conducted a complete *Batson* analysis. (*State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Decision and Order at 6.)

---

argument regarding Juror 71's responses and demeanor in the separate matter, argued that because he had not been present at the voir dire in the *Dawood* matter, and because the State was asserting the demeanor argument for the first time at the hearing on the motion for new trial, he had no opportunity to address it. (*Id*. at 29:14-21; 30:11-19.) The trial court did not rely on the voir dire of Juror 71 in the *Dawood* matter in reaching its decision on the post-trial motion. (*State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Decision and Order at 10 n.3.)

[3] The State explained that it challenged the five jurors before the challenge of Juror 71, even though the jurors had higher educational levels (two had reached the 12th grade, one the 13th, one the 14th, and one the 16th), because the five jurors "all had records of some sort." (*State v. Hollis*, Me. Sup. Ct., And. Cty., No. CR-2016-01677, Post-trial Hearing Transcript at 21:23-22-9.)

Specifically, the court noted that it had not applied *Batson*'s three-step analysis. (*Id.*) In its decision on the post-trial motion, the trial court assessed the challenge under the *Batson* analysis. The court found that Petitioner had made a prima facie showing regarding the challenge of Juror 71 and that the State had offered a race-neutral explanation – "namely, [Juror 71's] relatively low level of education." (*Id.* at 7.) At step three of the analysis, the trial court found that the prosecution's challenge of Juror 71 "was not exercised with a discriminatory intent or purpose." (*Id.* at 8.) The court found the prosecution's explanation to be "credible and believable." (*Id.*) The court, in assessing all the State's peremptory challenges and the composition of the empaneled jury, also determined that the State's conduct was consistent with its stated strategy of empaneling a jury of individuals with higher education levels. (*Id.* at 8-9.)

On appeal, Petitioner argued the trial court erred in its *Batson* analysis. The Law Court affirmed the trial court's decision. *State v. Hollis*, 2018 ME 94; 189 A.3d 244. The Law Court noted that although it "may be skeptical of a proffered explanation for striking a juror based on low education level without individual voir dire on intelligence or education," the trial court's finding of fact regarding "'the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Id.* at ¶ 14 (quoting *Hernandez v. New York*, 500 U.S. 352, 364 (1991) (plurality opinion)). The Law Court reasoned that Petitioner had not established "that the record compelled the court to find that the prosecutor's explanation was a pretext for discrimination." *Id.* at ¶ 15. The Law Court thus concluded that "the trial court did not err when it determined that the prosecutor did not engage in purposeful discrimination." *Id.*

5

## DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

A petitioner is generally required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C. § 2254(b), (c).[4] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged

---

[4] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

**(A)** the applicant has exhausted the remedies available in the courts of the State; or

**(B) (i)** there is an absence of available State corrective process; or

**(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

**(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

**(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66). To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The State did not raise an exhaustion challenge in this case.

With respect to federal habeas claims that were adjudicated on the merits in state court, a federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[5]

As the Supreme Court explained:

A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system. Where 28

---

[5] Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

> U.S.C. § 2254 applies, our habeas jurisprudence embodies this deference. Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2) …. [U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J.). The First Circuit, in applying the *Williams* standard, noted that

> [s]ome possible readings of "unreasonable application" are too severe: *Williams* indicates that the test is not whether it is possible that a competent court could have reached the same conclusion…. Some possible readings are too lenient: the mere fact that there was some error or that the state decision was incorrect is not enough…. The range for what is an unreasonable application must fall somewhere between the two. Within that range, if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application. We agree with the Second Circuit that "some increment of incorrectness beyond error is required." *Francis S.* [*v. Stone*], 221 F.3d [100, 111 (2d Cir. 2000)]. The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.

*McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (some citations omitted).

Under the applicable standard, therefore, when the state court has made a "prior determination of fact that the State's race-neutral explanations were true," Petitioner "may obtain relief only by showing the [state court's] conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)). This Court must presume the state court's "factual findings to be sound" unless Petitioner

8

"rebuts the 'presumption of correctness by clear and convincing evidence.'" *Id*. (quoting 28 U.S.C. § 2254(e)(1)). As the Supreme Court wrote, this standard "is demanding but not insatiable; as we said [before], '[d]eference does not by definition preclude relief.'" *Id*. (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### B. Grounds Asserted and Analysis – Petitioner's *Batson* Challenge

Petitioner asserts the state court violated his right to a fair trial by an impartial jury of his peers when the State challenged Juror 71, the only person of color among the potential jurors. "[R]acial discrimination in jury selection offends the Equal Protection Clause." *Batson*, 476 U.S. at 85. The Supreme Court explained:

> Defendants are harmed, of course, when racial discrimination in jury selection compromises the right of trial by impartial jury, *Strauder v. West Virginia*, [100 U.S. 303,] 308 [(1880], but racial minorities are harmed more generally, for prosecutors drawing racial lines in picking juries establish "state-sponsored group stereotypes rooted in, and reflective of, historical prejudice," *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 128 (1994).

*Miller-El v. Dretke*, 545 U.S. at 237-38. Indeed, "the very integrity of the courts is jeopardized when a prosecutor's discrimination 'invites cynicism respecting the jury's neutrality,' and undermines public confidence in adjudications." *Id*. at 238 (quoting *Powers v. Ohio*, 499 U.S. 400, 412 (1991)). The "Constitution forbids striking even a

9

single prospective juror for a discriminatory purpose." *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

Here, the record establishes that Petitioner demonstrated a prima facie case under *Batson* and that the State offered a race-neutral reason for its challenge.[6] The issue is thus whether the state court erred in its determination that Petitioner failed to establish that the challenge of Juror 71 was the result of purposeful discrimination.

While the State must offer a race-neutral explanation in the second step of the *Batson* analysis, the State does not have to prove the lack of purposeful discrimination. As the Supreme Court noted in *Johnson v. California*, "*Batson*, of course, explicitly stated that the defendant ultimately carries the 'burden of persuasion' to 'prove the existence of purposeful discrimination.'" 545 U.S. 162, 170-71 (2005) (quoting *Batson*, 476 U.S. at 93); *see also U.S. v. Mensah*, 737 F.3d 789, 796 (1st Cir. 2013) (a defendant "opposing a peremptory strike bears the burden of proof throughout the inquiry.").

For both trial courts and reviewing courts, the "rub has been the practical difficulty of ferreting out discrimination in selections discretionary by nature, and choices subject to myriad legitimate influences, whatever the race of the individuals on the panel from which jurors are selected." *Miller-El*, 545 U.S. at 238. In the assessment of proffered reasons for a challenge, "determinations of credibility and demeanor lie peculiarly within a trial judge's province." *Snyder*, 552 U.S. at 477. The "'best evidence [of discriminatory intent]

---

[6] Unless discriminatory intent is inherent in the State's explanation for the challenge, "the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360.

10

often will be the demeanor of the attorney who exercises the challenge.'" *Id*. (quoting *Hernandez*, 500 U.S. at 365 (alternation in original).

The State asserts that it used a peremptory challenge to remove Juror 71 because of his level of education. Petitioner's level of education was less than the education level of the thirty-two potential jurors and thus of the fourteen empaneled jurors. As the state court noted, the record supports the State's contention that the level of education of the jurors was a factor in the State's jury selection strategy.[7] (Decision and Order at 8-9.) The fourteen jurors (including alternates) empaneled had a higher education level than Juror 71. The jury consisted of six jurors with a 12th grade education and eight jurors with education levels from 13 to 18 years. The state court supportably found that education level was a consideration in the State's overall jury selection strategy.[8]

*Batson* requires a court to conduct a specific three-part analysis to determine whether the challenge was the product of purposeful discrimination. In this case, given the trial court's determination regarding the credibility of the State's proffered explanation for challenging Juror 71, the lack of other indicia of pretext—such as a history of other questionable challenges in Petitioner's trial, *see e.g., Miller-El*, 545 U.S. at 236 (ten African American jurors stricken); *Snyder*, 552 U.S. at 476 (five African American jurors stricken); *McGahee v. Alabama Dept. of Corr.*, 560 F.3d at 1252, 1259 (11th Cir. 2009) (sixteen of twenty two peremptory challenges used to remove African American jurors),

---

[7] While the State also used its peremptory challenges to remove other jurors with a high school education or higher, the State proffered other legitimate reasons for challenging the jurors.

[8] The Law Court determined that particularly in the context of the Petitioner's self-defense argument, the State's "proffered strategy was not unreasonable." *Hollis*, 2018 ME 94 at ¶ 15, n.4.

and the lack of evidence of a demonstrated history of racially motivated challenges by the State, *see, e.g., Miller-El*, 545 U.S. at 263-64, the state court did not unreasonably determine the relevant facts or unreasonably interpret and apply *Batson*. Petitioner, therefore, is not entitled to relief on his section 2254 motion.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court deny Petitioner's request for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 6th day of December, 2019.